AO 91

Rev. 11/82

ORIGINAL

# CRIMINAL COMPLAINT

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br><br>STEVE JAMES MURPHY | DOCKET NO. **09 - 2230M** NK<br><br>MAGISTRATE'S CASE NO.<br>FILED CLERK U.S. DISTRICT COURT<br>SEP 2 4 2009<br>CENTRAL DISTRICT OF CALIFORNIA DEPUTY |

Complaint for violation of Title 18 United States Code § 844(i)

| NAME OF MAGISTRATE JUDGE<br><br>Honorable Paul L. Abrams | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br><br>Los Angeles, CA |
|---|---|---|
| **DATE OF OFFENSE**<br>September 19, 2006 | **PLACE OF OFFENSE**<br>Los Angeles County | **ADDRESS OF ACCUSED (IF KNOWN)** |

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

On or about September 19, 2006, in Los Angeles County, within the Central District of California, defendant STEVE JAMES MURPHY, aka Steven James Murphy, aka Stephen James Murphy, willfully and malicious attempted to damage and destroy, by means of fire and an explosive, property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce, namely, property located at 40 South Arroyo Drive, Pasadena, California.

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

  (See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE:

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br><br>OFFICIAL TITLE<br>SA- Jason Ernst |
|---|---|

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE(1) | DATE<br><br>September 24, 2009 |
|---|---|

1) See Federal Rules of Criminal Procedure rules 3 and 54.

SPG:1c

A F F I D A V I T

I, Jason Ernst, being duly sworn, hereby depose and say:

AFFIANT'S QUALIFICATIONS

1.     I am a Special Agent ("SA") of the Federal Bureau of
Investigation ("FBI") and have been so employed for over six
years.  I am an investigative or law enforcement officer of the
United States within the meaning of Section 2510(7) of Title 18,
United States Code ("U.S.C."), that is, an officer of the United
States who is empowered by law to conduct investigations of and
to make arrests for, offenses enumerated in Title 18, U.S.C.,
Section 2516.  Prior to my current assignment, I was assigned to
investigate the criminal activities of violent street gangs as a
member of the Los Angeles Metropolitan Task Force on Violent
Crimes.  I am currently assigned to investigate counterterrorism
matters, primarily domestic terrorism, at the West Covina
Resident Agency of the Los Angeles Field Office of the FBI.  I
have worked federal terrorism investigations since December of
2006.  During my tenure as a SA with the FBI, I have conducted
and participated in several investigations of criminal activity,
including the investigation of acts of Domestic Terrorism and
arson.  I have received criminal and domestic terrorism training
provided by the FBI and local law enforcement agencies and have
been instructed on the proper methods of conducting
investigations.  I have participated in the development and

1

execution of a great number of search and arrest warrants involving criminal and terrorism matters and seized evidence of violations of federal law.  I have spoken with numerous informants and experienced investigators about the methods and practices of environmental extremists, both in general and specifically with regards to eco-terrorism.  Before preparing this warrant, I communicated with other FBI employees, other law enforcement officers, arson investigators of the Pasadena Fire Department and San Gabriel Valley Arson Task Force, and officers of the Pasadena Police Department.  The information in this affidavit has become known to me through my personal knowledge of this investigation and through oral and written communications with the above-referenced law enforcement personnel.

PURPOSE OF AFFIDAVIT

2.    This affidavit is made in support of an application for a complaint and arrest warrant for STEVE JAMES MURPHY ("MURPHY"), also known as ("aka") Steven James Murphy and Stephen James Murphy, for violating Title 18, United States Code, Section 844(i), attempted arson of any building used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce.  This affidavit is made for the sole purpose of establishing probable cause for the requested complaint and arrest warrant, and does not purport to set forth all of my knowledge of, or investigation into, this matter.  Because the

2

purpose of this affidavit is to set forth only those facts necessary to establish probable cause for the issuance of the requested warrant, I have not described all of the relevant facts and circumstances of which I am aware.

PROBABLE CAUSE

3.    I have reviewed investigative reports prepared by law enforcement officers of the Pasadena Police Department and Pasadena Fire Department concerning an attempted arson at 40 South Arroyo Drive, Pasadena, California, on or about September 19, 2006.   I have also spoken with Alan Crall of the Lefevre corporation and Jim Bell of Hagle lumber.   From my review of the reports and conversations with the aforementioned law enforcement officers and witnesses, I have learned the following:

a.    In September 2006, a construction project was underway at 40 South Arroyo Drive, Pasadena, California.   The project was contracted by the Lefevre Corporation.   Construction commenced at the site in 2003 and was ongoing in 2006.   The construction consisted of the renovation of historic buildings and construction of new structures, all to be later sold or rented as luxury town homes.   The project site, which was located directly beneath the Colorado Bridge in Pasadena, spanned approximately three acres.

b.    In September 2006, the buildings in the project were at various stages of construction across the entire area.

3

c.    According to Alan Crall of the Lefevre corporation, Hagle Lumber was the sole source used to obtain lumber for this project, and the granite and marble to be used in the project were obtained from sources in China and Europe, respectively.   According to Jim Bell of Hagle lumber, approximately 80 percent of the lumber distributed by Hagle was acquired from Oregon, Washington, and Canada.

d.    On September 19, 2006, at approximately 2:00 p.m., the Pasadena Fire Department was contacted by construction workers at 40 South Arroyo Boulevard concerning the discovery of an incendiary device.

e.    The incendiary device was located on the second floor of a partially constructed unit in the northwest section of the construction site.   At the time, this particular unit had only been framed with wood.

f.    The Pasadena Fire Department processed the crime scene with assistance from the Pasadena Police Department.

g.    The incendiary device was made from a half gallon juice bottle labeled "Trader Joe's All Natural Dixie Peach 100% Juice blend." The bottle was approximately 75 percent full of a liquid that had the odor and appearance of gasoline.  An ignition and timing mechanism was fashioned using two side-by-side filtered cigarettes standing upright and wrapped at their lower ends with approximately 14 cardboard matches with the ignitable

4

ends of the matches facing upward.  This assembly was tied with a lightweight string and placed protruding through the top of a hole cut in the center of the twist-off cap that covered the juice bottle containing ignitable liquid.

h.    The cigarettes in the device had been lit prior to the device being discovered on September 19, 2006.  After being lit, the cigarettes had burned down approximately one inch, leaving approximately one half to three quarters of an inch of ash on their ends, but then had failed to burn down to the point where the matches had been wrapped around the ends of the cigarettes.  As a result, the cigarettes failed to light the matches, which, in turn, failed both to ignite the gasoline contained inside the bottle and start a fire inside the unit.

i.    On September 20, 2006, at approximately 6:30 a.m., construction workers attempted to utilize a tractor on the same construction site.  The workers discovered the vehicle to be inoperable and observed a phrase written in approximately two inch letters with a permanent marker on the side of the tractor which read, "ANOTHER TRACTOR DECOMMISIONED BY THE $E_xL_xF_x$."  The ignition area of the tractor had been tampered with but was repaired by maintenance staff prior to the arrival of law enforcement at the location.  I know from my training and experience that the Earth Liberation Front, or E.L.F., is known to be an underground environmental extremist movement in which

5

autonomous and anonymous individuals or groups commit acts of vandalism, sabotage, and arson in order to intimidate and inflict economic harm upon entities that are perceived to be directly or indirectly doing harm to the environment.

j.    Pasadena Fire Department responded to the construction site, and notified the FBI due to the E.L.F. graffiti and incendiary device that had been found on the previous day.

4.    On or about September 20, 2006, FBI personnel met with state investigators and swept the location of the attempted arson for additional devices, vandalism, and evidence. FBI personnel discovered a "ski" glove near the site of the attempted arson. The evidence, consisting of the plastic juice bottle, a sample of the liquid in the bottle, the twist-off cap assembly and the ski glove were sent to the FBI laboratory in Quantico, Virginia, for processing.

5.    I have reviewed a report dated March 14, 2008, prepared by Jennifer C. Luttman from the FBI Laboratory, DNA Analysis Unit I, in Quantico, Virginia. From my review of the report, I have learned the following:

a.    Male Deoxyribo Nucleic Acid ("DNA") was recovered from the mouth of the juice bottle and the two cigarettes on the incendiary device.

b.    Analysis of the DNA obtained from the mouth of the

6

juice bottle did not satisfy criteria to identify a single individual.

c.    Analysis of the DNA and typing results obtained from both cigarettes on the incendiary device indicates DNA from a single individual.  At the time of the analysis, the individual was initially unidentified.  However, the DNA has since been matched to MURPHY, as detailed below.

d.    After completion of the DNA analysis the results were maintained by the FBI laboratory for possible future comparison.

6.    I have reviewed a report dated July 29, 2009, prepared by Tina M. Delgado from the FBI Laboratory, DNA Analysis Unit I, in Quantico, Virginia.  I also spoke with Ms. Delgado concerning her report.  From my review of the report and conversation with Ms. Delgado, I have learned the following:

a.    In approximately July 2009, the results for the DNA samples collected from the September 2006 attempted arson were entered in the Combined DNA Index System ("CODIS").

b.    A CODIS search was performed using the DNA profile of the samples extracted from the cigarettes.  The search found the profile of the DNA extracted from the cigarettes to match that of the DNA profile for MURPHY, which had been submitted by the State of California Department of Justice in connection with a prior arrest of MURPHY.

7

7.    Based on the foregoing information, I believe that there is probable cause to believe that on or before September 19, 2009, STEVE JAMES MURPHY ("MURPHY"), aka Steven James Murphy and Stephen James Murphy, attempted to damage or destroy the building located at 40 South Arroyo Boulevard, Pasadena, California, a construction project which affected interstate commerce, in violation of Title 18, United States Code, Section 844(i).

Jason Ernst
Special Agent
Federal Bureau of Investigation


Subscribed and sworn to
before me this 24ᵗʰ day of
September, 2009.


THE HON. PAUL L. ABRAMS
United States Magistrate Judge

8