GEORGE S. CARDONA
Acting United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
SHERILYN PEACE GARNETT (Cal. Bar No. 208318)
Assistant United States Attorney
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-3424
    Facsimile:  (213) 894-6436
    E-Mail:   sherilyn.garnett@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR No. 09-1085(A)-R |
| | ) | |
| Plaintiff, | ) | PLEA AGREEMENT FOR DEFENDANT |
| | ) | STEVEN JAMES MURPHY |
| v. | ) | |
| | ) | |
| STEVEN JAMES MURPHY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

    1.  This constitutes the plea agreement between STEVEN JAMES MURPHY ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities.

PLEA

    2.  Defendant gives up the right to indictment by a grand jury and agrees to plead guilty to a single-count information in

///

1  the form attached to this agreement or a substantially similar

2  form.

### NATURE OF THE OFFENSE

3.  In order for defendant to be guilty of the single-count information, which charges a violation of Title 18, United States Code ("U.S.C."), Section 371, the following must be true:

First, on or about the dates charged in the information, there was an agreement between two or more persons to commit arson, in violation of 18 U.S.C. § 844(i);

Second, defendant became a member of the conspiracy knowing of its object and intending to help accomplish it; and

Third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

Moreover, to be guilty of the object of the conspiracy, namely, arson under 18 U.S.C. § 844(i), the following must be true:

First, defendant willfully damaged or destroyed, or attempted to damage or destroy, a building, vehicle, or other real or personal property by means of fire;

Second, defendant acted maliciously and without justification; and

Third, the building was being used in interstate commerce or in an activity substantially affecting interstate commerce.

Defendant admits that defendant is, in fact, guilty of a violation of 18 U.S.C. § 371 as described in the single-count information.

2

## PENALTIES

4.   The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 371, is: five (5) years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

5.   Supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.   Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

6.   Defendant also understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury.

7.   Defendant further understands that the conviction in this case may subject defendant to various collateral consequences, including but not limited to deportation, revocation of probation, parole, or supervised release in another case, and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

///

FACTUAL BASIS

8.    Defendant and the USAO agree and stipulate to the statement of facts provided below.  This statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the sentencing guideline factors set forth in paragraph 12 below.  It is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Beginning on a date unknown and continuing to on or about September 19, 2006, in Los Angeles, County and elsewhere, defendant and an unindicted co-conspirator involved in an underground movement known as the Environmental Liberation Front or "E.L.F." conspired and agreed to maliciously damage or destroy by means of fire real property used in interstate commerce or an activity affecting interstate commerce.  Defendant became a member of the conspiracy knowing of its object and intending to help accomplish it.

In furtherance of the aforementioned conspiracy, on a date before September 19, 2006, defendant learned from the unindicted co-conspirator how to assemble an incendiary device consisting of a plastic bottle, gasoline, and a delayed ignition timer. Defendant also discussed and agreed with the unindicted co-conspirator that such an incendiary device should be used to burn a large scale, multi-million dollar building project of a scale that would likely have a substantial effect on interstate commerce.  Defendant and the unindicted co-conspirator agreed that the purpose of burning such a large scale project was to

1   intimidate, coerce, and inflict economic harm on individuals and
2   entities that they believed to be causing harm to the
3   environment.
4       Using the information obtained from the unindicted co-
5   conspirator, defendant constructed an incendiary device using an
6   approximately half gallon Trader Joe's juice bottle filled
7   approximately 75% full with gasoline and a delayed ignition
8   timer.  The delayed ignition timer consisted of two side-by-side
9   filtered cigarettes standing upright, which defendant wrapped at
10  their filtered ends with approximately fourteen cardboard matches
11  and tied with twine.  Defendant inserted this delayed ignition
12  timer into a hole cut in the center of the twist-off cap that
13  covered the plastic juice bottle containing gasoline.
14      On or about September 19, 2006, defendant placed the
15  incendiary device he constructed into an upstairs unit of an
16  approximately thirty-unit, multi-million dollar historic
17  condominium project located directly beneath and adjacent to the
18  Colorado bridge in Pasadena, California.  Defendant lit the
19  incendiary device with the malicious intent to destroy by fire
20  the unit, the building in which the unit was located, and the
21  remaining structures in the project.  Defendant also knew and
22  could reasonably foresee that an ensuing fire could endanger or
23  seriously damage the structures surrounding and intersecting the
24  project.  By placing the incendiary device in the unit and
25  igniting the delayed ignition timer, defendant completed all of
26  the acts necessary to maliciously destroy by means of fire the
27  unit, building, surrounding structures, and vegetation.
28      On or about September 19, 2006, defendant also disabled a

1  tractor located in the Pasadena project near the unit where
2  defendant had placed the incendiary device.  After doing so,
3  defendant wrote in permanent black marker on the disabled tractor
4  the words "Another tractor decommissioned by the E.L.F."
5  Defendant did so to claim responsibility for both the arson and
6  disabling of the tractor in the name of the E.L.F. and to
7  intimidate and coerce the population of civilians that he and his
8  co-conspirators believed to be causing harm to the environment.

9        At all times relevant to the offense, the buildings, real
10 property, and surrounding structures that were involved in the
11 attempted arson were being used in interstate commerce and in an
12 activity that had a substantial effect on interstate commerce.

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

14      9.  By pleading guilty, defendant gives up the following
15 rights:

16           a)    The right to persist in a plea of not guilty.

17           b)    The right to a speedy and public trial by jury.

18           c)    The right to the assistance of legal counsel at
19 trial, including the right to have the Court appoint counsel for
20 defendant for the purpose of representation at trial.  (In this
21 regard, defendant understands that, despite his plea of guilty,
22 he retains the right to be represented by counsel -- and, if
23 necessary, to have the court appoint counsel if defendant cannot
24 afford counsel -- at every other stage of the proceeding.)

25           d)    The right to be presumed innocent and to have the
26 burden of proof placed on the government to prove defendant
27 guilty beyond a reasonable doubt.

28           e)    The right to confront and cross-examine witnesses

1  against defendant.

2      f)    The right, if defendant wished, to testify on

3  defendant's own behalf and present evidence in opposition to the

4  charges, including the right to call witnesses and to subpoena

5  those witnesses to testify.

6      g)    The right not to be compelled to testify, and, if

7  defendant chose not to testify or present evidence, to have that

8  choice not be used against defendant.

9      By pleading guilty, defendant also gives up any and all

10  rights to pursue any affirmative defenses, Fourth Amendment or

11  Fifth Amendment claims, and other pretrial motions that have been

12  filed or could be filed.

13                    WAIVER OF DNA TESTING

14      10.   Defendant has been advised that the government has in

15  its possession the following items of physical evidence that have

16  been subjected to DNA testing: (1) a 64 oz. plastic bottle; (2) a

17  black ski glove; (3) a white plastic lid and matches; and (4) two

18  cigarettes.  Defendant understands that the government has

19  previously submitted items (1) through (4) for DNA testing and

20  does not intend to conduct any further DNA testing of those items

21  or any other items.  Defendant understands that, before entering

22  a guilty plea pursuant to this agreement, defendant could request

23  DNA testing of evidence in this case.  Defendant further

24  understands that, with respect to the offense to which defendant

25  is pleading guilty pursuant to this agreement, defendant would

26  have the right to request DNA testing of evidence after

27  conviction under the conditions specified in 18 U.S.C. § 3600.

28      Knowing and understanding defendant's right to request DNA

1  testing, defendant voluntarily gives up that right with respect

2  to both the specific items listed above and any other items of

3  evidence there may be in this case that might be amenable to DNA

4  testing.  Defendant understands and acknowledges that by giving

5  up this right, defendant is giving up any ability to request DNA

6  testing of evidence in this case in the current proceeding, in

7  any proceeding after conviction under 18 U.S.C. § 3600, and in

8  any other proceeding of any type.  Defendant further understands

9  and acknowledges that by giving up this right, defendant will

10 never have another opportunity to have the evidence in this case,

11 whether or not listed above, submitted for DNA testing, or to

12 employ the results of DNA testing to support a claim that

13 defendant is innocent of the offense to which defendant is

14 pleading guilty.

15                    <u>SENTENCING FACTORS</u>

16      11.  Defendant understands that the Court is required to

17 consider the factors set forth in 18 U.S.C. § 3553(a)(1)-(7),

18 including the kinds of sentence and sentencing range established

19 under the United States Sentencing Guidelines ("U.S.S.G." or

20 "Sentencing Guidelines"), in determining defendant's sentence.

21 Defendant further understands that the Sentencing Guidelines are

22 advisory only, and that after considering the Sentencing

23 Guidelines and the other § 3553(a) factors, the Court may be free

24 to exercise its discretion to impose any reasonable sentence up

25 to the maximum set by statute for the crime of conviction.

26      12.  Defendant and the USAO agree and stipulate to the

27 following applicable Sentencing Guidelines factors under the

28 ///

November 1, 2009, version of the Sentencing Guidelines:

| | | | |
|---|---|---|---|
| Base Offense Level : | 20 | U.S.S.G. § 2X1.1(a), § 2K1.4(a)(2) | |
| Adjustments (Offense intended to influence a civilian population): | +7 | U.S.S.G. § 3A1.4, Note 4 | |
| Acceptance of Responsibility : | -3 | U.S.S.G. § 3E1.1 (a) | |

Total Offense Level :        24

Criminal History Category:    I

Applicable Guidelines Range:  51 - 63 months

The USAO will agree to a downward adjustment for acceptance of responsibility (and, if applicable, move for an additional level under § 3E1.1(b)) only if the conditions set forth in paragraph 16 are met. Subject to paragraph 15, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments or departures, relating to either the applicable Offense Level or the Criminal History Category, be imposed. If, however, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section.

13. Defendant and the USAO also agree and stipulate that, taking into account the factors listed in 18 U.S.C. § 3553(a)(1)-(7), the relevant Sentencing Guidelines effective on November 1,

1  2009, represent a reasonable basis for the Court to determine

2  defendant's sentence in this case, and agree that defendant

3  should be sentenced in accordance with the Sentencing Guidelines

4  to a sentence of sixty (60) months in prison, which is at the

5  higher end of the Sentencing Guidelines range.

6      Therefore, subject to paragraph 15, defendant and the USAO

7  agree not to seek, argue, or suggest in any way, either orally or

8  in writing, that the Court (a) not follow the Sentencing

9  Guidelines in imposing sentence; (b) impose a sentence not in

10  accordance with the Sentencing Guidelines; or (c) impose a

11  sentence outside the sentencing range corresponding to the

12  determined total offense level; or (c) impose a sentence outside

13  the sentencing range for the total offense level stipulated to

14  above.

15      14.  The stipulations in this agreement do not bind either

16  the United States Probation Office or the Court.  Both defendant

17  and the USAO are free to: (a) supplement the facts by supplying

18  relevant information to the United States Probation Office and

19  the Court, (b) correct any and all factual misstatements relating

20  to the calculation of the sentence, and (c) argue on appeal and

21  collateral review that the Court's Sentencing Guidelines

22  calculations are not error, although each party agrees to

23  maintain its view that the calculations in paragraph 12 are

24  consistent with the facts of this case.

25                     DEFENDANT'S OBLIGATIONS

26      15.  Defendant agrees that he will:

27          a)   Plead guilty as set forth in this agreement.

28          b)   Not knowingly and willfully fail to abide by all

1  sentencing stipulations contained in this agreement.

2              c)    Not knowingly and willfully fail to: (i) appear
3  for all court appearances, (ii) surrender as ordered for service
4  of sentence, (iii) obey all conditions of any bond, and (iv) obey
5  any other ongoing court order in this matter.

6              d)    Not commit any crime; however, offenses which
7  would be excluded for sentencing purposes under U.S.S.G.
8  § 4A1.2(c) are not within the scope of this agreement.

9              e)    Not knowingly and willfully fail to be truthful at
10 all times with Pretrial Services, the U.S. Probation Office, and
11 the Court.

12             f)    Pay the applicable special assessment at or before
13 the time of sentencing unless defendant lacks the ability to pay
14 and submits a completed financial statement (form OBD-500) to the
15 USAO prior to sentencing.

16                          THE USAO'S OBLIGATIONS

17    16.  If defendant complies fully with all defendant's
18 obligations under this agreement, the USAO agrees:

19             a)    To abide by all sentencing stipulations contained
20 in this agreement.

21             b)    At the time of sentencing to move to dismiss the
22 underlying indictment as against defendant.  Defendant agrees,
23 however, that at the time of sentencing the Court may consider
24 the underlying indictment in determining the applicable
25 Sentencing Guidelines range, where the sentence should fall
26 within that range, the propriety and extent of any departure from
27 that range, and the determination of the sentence to be imposed
28 after consideration of the Sentencing Guidelines and all other

                                  11

1  relevant factors under 18 U.S.C. § 3553(a).

2         c)   At the time of sentencing, provided that defendant

3  demonstrates an acceptance of responsibility for the offense up

4  to and including the time of sentencing, to recommend a two-level

5  reduction in the applicable sentencing guideline offense level,

6  pursuant to U.S.S.G. § 3E1.1, and to recommend and, if necessary,

7  move for an additional one-level reduction if available under

8  that section.

9                      BREACH OF AGREEMENT

10      17.  If defendant, at any time after the execution of this

11 agreement, knowingly violates or fails to perform any of

12 defendant's agreements or obligations under this agreement ("a

13 breach"), the USAO may declare this agreement breached.  If the

14 USAO declares this agreement breached at any time following its

15 execution, and the Court finds such a breach to have occurred,

16 then: (a) if defendant has previously entered a guilty plea,

17 defendant will not be able to withdraw the guilty plea, and (b)

18 the USAO will be relieved of all of its obligations under this

19 agreement.

20      18.  Following the Court's finding of a knowing and willful

21 breach of this agreement by defendant, should the USAO elect to

22 pursue any charge that was either dismissed or not filed as a

23 result of this agreement, then:

24         a)   Defendant agrees that any applicable statute of

25 limitations is tolled between the date of defendant's signing of

26 this agreement and the commencement of any such prosecution or

27 action.

28         b)   Defendant gives up all defenses based on the

                              12

1  statute of limitations, any claim of pre-indictment delay, or any

2  speedy trial claim with respect to any such prosecution, except

3  to the extent that such defenses existed as of the date of

4  defendant's signing this agreement.

5         c)    Defendant agrees that: (i) any statements made by

6  defendant, under oath, at the guilty plea hearing (if such a

7  hearing occurred prior to the breach); (ii) the stipulated

8  factual basis statement in this agreement; and (iii) any evidence

9  derived from such statements, are admissible against defendant in

10 any such prosecution of defendant, and defendant shall assert no

11 claim under the United States Constitution, any statute, Rule 410

12 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules

13 of Criminal Procedure, or any other federal rule, that the

14 statements or any evidence derived from any statements should be

15 suppressed or are inadmissible.

16              LIMITED MUTUAL WAIVER OF APPEAL

17      19.  Defendant gives up the right to appeal any sentence

18 imposed by the Court, and the manner in which the sentence is

19 determined, provided that the sentence is within the statutory

20 maximum specified above and is constitutional.  Notwithstanding

21 the foregoing, defendant retains any ability defendant has to

22 appeal the conditions of supervised release imposed by the Court,

23 with the exception of the following: conditions set forth in

24 General Orders 318, 01-05, and/or 05-02 of this Court; the drug

25 testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and

26 3583(d); and the alcohol and drug use conditions authorized by 18

27 U.S.C. § 3563(b)(7).

28      20.  The USAO gives up its right to appeal the sentence,

1  provided that the sentence is within the statutory maximum

2  specified above and is constitutional.

### RESULT OF VACATUR, REVERSAL OR SET-ASIDE

4      21.   Defendant agrees that if the count of conviction is

5  vacated, reversed, or set aside, the USAO may ask the Court to

6  void the entire plea agreement and reinstate the underlying

7  indictment.   Defendant agrees that the decision to exercise this

8  option rests in the exclusive discretion of the USAO.

### COURT NOT A PARTY

10     22.   The Court is not a party to this agreement and need not

11 accept any of the USAO's sentencing recommendations or the

12 parties' stipulations.   Even if the Court ignores any sentencing

13 recommendation, finds facts or reaches conclusions different from

14 any stipulation, and/or imposes any sentence up to the maximum

15 established by statute, defendant cannot, for that reason,

16 withdraw defendant's guilty plea, and defendant will remain bound

17 to fulfill all defendant's obligations under this agreement.   No

18 one -- not the prosecutor, defendant's attorney, or the Court --

19 can make a binding prediction or promise regarding the sentence

20 defendant will receive, except that it will be within the

21 statutory maximum.

### NO ADDITIONAL AGREEMENTS

23     23.   Except as set forth herein, there are no promises,

24 understandings or agreements between the USAO and defendant or

25 defendant's counsel.   Nor may any additional agreement,

26 understanding or condition be entered into unless in a writing

27 signed by all parties or on the record in court.

28 ///

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

24.    The parties agree and stipulate that this Agreement will be considered part of the record of defendant's guilty plea hearing as if the entire Agreement had been read into the record of the proceeding.

This agreement is effective upon signature by defendant and an Assistant United States Attorney.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

GEORGE S. CARDONA
Acting United States Attorney

_____        1/11/10
SHERILYN PEACE GARNETT                  Date
Assistant United States Attorney


I have read this agreement and carefully discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms.  My attorney has advised me of my rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises or inducements have been given to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  Finally, I am satisfied with the representation of my attorney in this matter.

_____        1-9-10
STEVEN JAMES MURPHY                     Date
Defendant

15

1    I am Steven James Murphy's attorney. I have carefully

2  discussed every part of this agreement with my client. Further,

3  I have fully advised my client of his rights, of possible

4  defenses, of the sentencing factors set forth in 18 U.S.C.

5  § 3553(a), of the relevant Sentencing Guidelines provisions, and

6  of the consequences of entering into this agreement. To my

7  knowledge, my client's decision to enter into this agreement is

8  an informed and voluntary one.

9

10  _____          ___1/9/2010_____
    CHRISTOPHER W. DYBWAD                              Date
11  Counsel for Defendant
    Steven James Murphy
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT A

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>                v.<br><br>STEVEN JAMES MURPHY,<br><br>                Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) | CR No. 09-1085(A)-R<br><br>I N F O R M A T I O N<br><br>[18 U.S.C. § 371: Conspiracy to Commit Arson] |

The Acting United States Attorney charges:

I.    OBJECT OF THE CONSPIRACY

Beginning on a date unknown to the Grand Jury and continuing to on or about September 19, 2006, in Los Angeles County, within the Central District of California, and elsewhere, defendant STEVE JAMES MURPHY and an unindicted co-conspirator knowingly and willfully conspired and agreed to commit arson, namely, to maliciously damage and destroy, by means of fire, buildings, vehicles, and other real and personal property used in interstate and foreign commerce and in activities affecting interstate and

SPG:spg

1  foreign commerce, in violation of Title 18, United States Code,

2  Section 844(i).

3  II.  MEANS OF THE CONSPIRACY

4      The foregoing object of the conspiracy was to be

5  accomplished in the following manner:

6      1.    The unindicted co-conspirator would teach defendant

7  STEVEN JAMES MURPHY how to assemble an incendiary device to use

8  in burning large scale, multi-million dollar building projects on

9  behalf of the Earth Liberation Front or "E.L.F."

10     2.    Defendant STEVEN JAMES MURPHY would identify a large

11 scale, multi-million dollar building project in the Pasadena,

12 California, area to be burned by fire on behalf of the "E.L.F."

13     3.    Defendant STEVEN JAMES MURPHY would use the

14 information obtained from the unindicted co-conspirator to

15 construct an incendiary device.

16     4.    Defendant STEVEN JAMES MURPHY would ignite the

17 incendiary device inside a building in the project in Pasadena,

18 California, with the malicious intent to destroy the building and

19 surrounding structures by the ensuing fire.

20     5.    Defendant STEVEN JAMES MURPHY would claim

21 responsibility for the fire and other damage in the name of the

22 E.L.F.

23 III. OVERT ACTS

24     In order to carry out the object of the conspiracy,

25 defendant STEVEN JAMES MURPHY and the unindicted co-conspirator

26 committed various overt acts within the Central District of

27 California, and elsewhere, including but not limited to the

28 following:

       1.    On unknown dates within the conspiracy period,

1   defendant STEVEN JAMES MURPHY spoke with the unindicted co-

2   conspirator and learned how to assemble an incendiary device

3   consisting of a plastic bottle, gasoline, and material for a

4

5   delayed ignition timer to use in burning a large scale building

6   project on behalf of the E.L.F.

7       2.   Prior to September 19, 2006, defendant STEVEN JAMES

8   MURPHY identified an approximately thirty-unit, multi-million

9   dollar, partially constructed condominium project located

10  directly beneath the Colorado street bridge at 40 to 44 Arroyo

11  Drive, Pasadena, California (hereinafter referred to as the

12  "Project"), as property he would burn using an incendiary device.

13      3.   Prior to September 19, 2006, defendant STEVE JAMES

14  MURPHY obtained an approximately 64-ounce plastic juice bottle

15  labeled "Trader Joe's All Natural Dixie Peach 100% Juice blend"

16  and filled the bottle approximately 75% full with gasoline.

17      4.   Prior to September 19, 2006, defendant STEVEN JAMES

18  MURPHY constructed a delayed ignition timer using two side-by-

19  side filtered cigarettes standing upright, which defendant

20  wrapped at their filtered ends with approximately fourteen

21  cardboard matches and tied with twine.

22      5.   Prior to September 19, 2006, defendant STEVEN JAMES

23  MURPHY completed construction of the incendiary device by

24  partially inserting the aforementioned delayed ignition timer

25  into a hole he had cut in the twist-off cap of the juice bottle

26  containing gasoline (hereinafter the juice bottle containing

27  gasoline and delayed ignition timer will be referred to

28  collectively as the "Incendiary Device").

    6.   On or about September 19, 2006, defendant STEVEN JAMES

1 | MURPHY placed the Incendiary Device in an upstairs unit of the

2 | Project.

3 |     7.   On or about September 19, 2006, defendant STEVEN JAMES

4 |

5 | MURPHY ignited the incendiary device with the malicious intent to

6 | destroy by fire the unit, the building in which it was located,

7 | and other structures in and around the Project.

8 |     8.   On or about September 19, 2006, defendant STEVEN JAMES

9 | MURPHY disabled the ignition of a tractor in the Project.

10 |     9.   On or about September 19, 2006, STEVEN JAMES MURPHY

11 | claimed responsibility for the aforementioned acts by writing the

12 | phrase "ANOTHER TRACTOR DECOMMISIONED BY THE $E_xL_xF_x$" on the side

13 | of the tractor with a permanent marker.

GEORGE S. CARDONA
Acting United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

PATRICK R. FITZGERALD
Assistant United States Attorney
Acting Chief, National Security Section

SHERILYN PEACE GARNETT
Assistant United States Attorney
National Security Section